## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No. 1:19-cv-24325

TRACFONE WIRELESS, INC., a Delaware
corporation,

     *Plaintiff*,

v.

CELLNTELL DISTRIBUTION INC., a
Canadian registered corporation, CNT
WIRELESS LLC, a New York limited
liability company, SK MOBILE, LTD., a
New York registered corporation, SGM
SOCHER, INC., a New York registered
corporation, SIMTEC TRADING LLC, a
New Jersey limited liability company, SD
COMMUNICATIONS, INC., a New Jersey
corporation, SAJID BUTT, MUHAMMAD
SHOAIB, FARHAN ASHRAF KHAN,
UMAR WARRAICH, MUHAMMAD AWAIS,
FAIZAN VALI, YOSEF GREENWALD,
LEVI EDELKOPF SIMCHA CHARLOP and
MANISH GUPTA,

     *Defendants*.

_____/

### TRACFONE'S COMPLAINT FOR DAMAGES AND
### INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff TracFone Wireless, Inc., a Delaware corporation, ("TracFone"), sues
Defendants CellnTell Distribution Inc., a Canadian registered corporation; CNT Wireless
LLC, a New York limited liability company; SK Mobile LTD, a New York limited
corporation; SGM Socher, Inc., a New York registered corporation; Simtec Trading LLC,
a New Jersey limited liability company; SD Communications, Inc. a New Jersey
corporation; Sajid Butt; Muhammad Shoaib; Farhan Ashraf Khan; Umar Warraich;
Muhammad Awais; Faizan Vali; Yosef Greenwald; Levi Edelkopf; Simcha Charlop; and
Manish Gupta ("Defendants") and states:

### INTRODUCTION

1.    Plaintiff TracFone Wireless, Inc. ("TracFone") sells wireless
telecommunications handsets throughout the United States under several brands,

including TracFone Wireless, NET10 Wireless, Total Wireless, Straight Talk, Telcel América, Simple Mobile, Walmart Family Mobile, and Page Plus, and under TracFone's trademarked ◎ "spiracle logo" (collectively, "TracFone Phones").

2.      TracFone provides financial incentives to its customers, including offering its TracFone Phones for sale at retail prices significantly below the wholesale price, in order to make the TracFone Phones affordable and accessible for consumers to use on TracFone's wireless network.

3.      Defendants and their co-conspirators are perpetrators of an unlawful scheme to enrich themselves by stealing TracFone's subsidies and other financial incentives that are intended to benefit legitimate consumers who use TracFone's network, thereby causing significant harm to TracFone and its customers (the "Scheme").

4.      Defendants and their co-conspirators take improper advantage of TracFone's financial incentives to acquire subsidized TracFone Phones for their own financial gain by using various nefarious methods to circumvent policies implemented by TracFone and its affiliates that are intended to protect TracFone and legitimate consumers.

5.      Among other tactics, Defendants and their co-conspirators avoid per person purchase limits by using numerous "Runners" to buy TracFone Phones from retailers such as Walmart and Best Buy.

6.      The Runners travel from store to store visiting multiple stores and purchasing as many of the TracFone Phones as possible on behalf of phone traffickers like Defendants, misrepresenting their intentions to actually use the TracFone Phones on TracFone's wireless telecommunications network.

7.      As part of the Scheme, TracFone Phones are frequently resold and purchased multiple times by various other traffickers who are co-conspirators with Defendants.

8.      Ultimately the TracFone Phones end up in a foreign country where wireless service providers generally do not provide financial incentives to facilitate the acquisition of wireless handsets.

9.     The TracFone Phones are then sold to an end user in that foreign country, who likely has no idea that the TracFone Phones were originally manufactured and sold for use on TracFone's wireless network in the United States.

10.     TracFone has information that many of these trafficked phones are going to countries on the sanctions list set forth by the U.S. State Department's Office of Foreign Assets Control, such as Iran and Venezuela.

11.     Along the way, Defendants or their co-conspirators frequently "unlock" the TracFone Phones so they will operate on a wireless network other than TracFone's.

12.     Defendants' Scheme takes advantage of the fact that while TracFone subsidizes the TracFone Phones to benefit its consumers who use TracFone's network in the United States, wireless service providers in other countries do not offer such financial incentives to facilitate the acquisition of wireless handsets.

13.     By obtaining the TracFone Phones under false or fraudulent pretenses and diverting them to other markets where phones are not subsidized, the Scheme illicitly converts TracFone's subsidies and other financial incentives into financial gain for Defendants and their co-conspirators.

14.     Although each Defendant may participate in less than all of the steps in the process of unlawfully diverting the TracFone Phones, every act by a Defendant in furtherance of the conspiracy renders that Defendant liable to TracFone for the harm caused by the entire Scheme.

15.     Defendants rely on and conspire with other unidentified parties to effectuate the Scheme.

16.     The Scheme causes harm to TracFone, its customers and to United States consumers generally.

17.     In addition to the pecuniary losses caused by Defendants' theft of TracFone's subsidy investments and other financial incentives, TracFone's lost sales and marketing expenses, and loss of expected customer revenue, Defendants' misconduct also harms TracFone's relationships with its customers, retailers and others.

18.     For example, Defendants and their co-conspirators generally seek to maximize their financial gains by purchasing all of the TracFone Phones for sale at each store they visit, leaving none available for sale to legitimate customers until that store's

inventory can be replenished. TracFone loses the opportunity to sell TracFone Phones to legitimate customers every time Defendants or their co-conspirators perpetrate their Scheme at a retail store, depriving TracFone of the revenue that would result from sales to legitimate customers.

19.     According to the Federal Communications Commission, TracFone had approximately 23 million customers at the end of 2017, accounting for roughly twenty-five percent (25%) of the prepaid wireless connections in the United States.[1]

20.     Defendants' Scheme removes a significant competitor from the marketplace for wireless telecommunications services in every store they plunder, harming Americans' access to an important national resource: "Mobile wireless services are an important and increasingly prevalent part of Americans' daily lives, and competition in the provision of mobile wireless services drives innovation and investment to the ultimate benefit of the American people and economy."[2]

21.     Defendants' Scheme also involves willful infringement of TracFone's trademarks, causing substantial damage to TracFone's brands, image and reputation.

22.     TracFone seeks to recover damages for all of the harm it suffered due to Defendants' Scheme, and to obtain an injunction prohibiting Defendants from continuing to perpetrate the Scheme.

23.     All conditions precedent to filing this action have been performed, waived, or excused.

24.     TracFone has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

PARTIES, JURISDICTION AND VENUE

25.     TracFone Wireless, Inc., is a Delaware corporation with its principal place of business in Miami, Florida.

26.     Defendant CellnTell Distribution Inc. ("CellnTell") is a Canadian corporation with its registered office and principal place of business in Ontario, Canada. CellnTell also does business online through its website cellntell.com.

---

[1] *Communications Marketplace Report: The State of Mobile Wireless Competition*, GN Docket No. 18-231, 18 FCC Rcd. 181 at p. 5, ¶7 (Dec. 26, 2018).

[2] *Id.* at p. 4, ¶ 5.

27.     Defendant CNT Wireless LLC ("CNT Wireless") is a New York limited liability company with its principal place of business in Getzville, New York. CNT Wireless also does business online through its website cntwireless.com.

28.     TracFone's investigation has revealed that CNT Wireless and CellnTell are functionally the same business doing business interchangeably on both sides of the United States-Canada border in the Niagara Falls region.

29.     CNT Wireless and CellnTell are also associated with multiple handset unlocking websites including: anyphoneunlocking.com; mrunlocking.com; and iphonescreenrepairbrampton.com.

30.     Indeed, CNT is an "official reseller" of the Octoplus Box tool and software, used to unlock handsets, including TracFone Phones.

31.     Defendant SK Mobile LTD ("SK Mobile") is a New York limited corporation with its principal place of business in Valley Stream, New York.

32.     Defendant SGM Socher Inc. ("SGM Socher") is a New York registered corporation with its principal place of business in Brooklyn, New York. SGM Socher also does business online through its website www.sgmsocher.com.

33.     Defendant Simtec Trading LLC ("Simtec Trading") is a New Jersey limited liability company with its principal place of business in Lakewood, New Jersey.  Upon information and belief, Simtec Trading operates a regional office in Miami, Florida.

34.     SD Communications, Inc. ("SD Communications") is a New Jersey corporation with its principal place of business in Parlin, New Jersey. SD Communications also does business as DS Communications and Digital Electronics, and it has sold product online through the website www.nyphoneunlock.com.

35.     Defendant Sajid Butt ("Butt") is an individual and a citizen of Canada. Butt is a principal and the registered agent of CNT Wireless. Butt is also a director of CellnTell.

36.     Defendant Muhammad Shoaib ("Shoaib") is an individual and a citizen of Canada. Shoaib is a director of CellnTell.

37.     Defendant Farhan Ashraf Khan ("Khan") is an individual and a citizen of Canada. Khan is a director of CellnTell.

38.     Defendant Umar Warraich ("Warraich") is an individual and a citizen of Canada. Warraich is a director of CellnTell.

39.     Defendant Muhammad Awais ("Awais") is an individual and a citizen of Canada. Awais is a director of CellnTell.

40.     Defendant Faizan Vali ("Vali") is an individual who resides in New York. Vali was the principal of SK Mobile during the events pertinent to this lawsuit against SK Mobile.

41.     Defendant Yosef Greenwald ("Greenwald") is an individual who resides in New York.  Greenwald was the principal of SGM Socher during the events pertinent to this lawsuit against SGM Socher.

42.     Defendant Levi Edelkopf ("Edelkopf") is an individual who resides in New York.  Upon information and belief, Edelkopf was a member of SGM Socher during the events pertinent to this lawsuit against SGM Socher.

43.     Defendant Simcha Charlop ("Charlop") is an individual who resides in New Jersey. Charlop also has a residence in Florida. Charlop was the principal of Simtec Trading during the events pertinent to this lawsuit against Simtec Trading.

44.     Defendant Manish Gupta ("Gupta") is an individual who resides in New Jersey. Gupta was the principal of SD Communications during the events pertinent to this lawsuit against SD Communications.

45.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 and 1338 because TracFone's claims for violations of the United States Trademark Act, Title 15 of the United States Code, arise under federal law.

46.     The Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over TracFone's state law claims against Defendants because those claims are so related to the federal claims that they form part of the same case or controversy.

47.     Defendants are subject to the personal jurisdiction of the Court under Fla. Stat. § 48.193, because they ship TracFone handsets to Florida, regularly transact business in Florida, committed a tort within Florida, and caused injury to a business based in Florida, thereby engaging in substantial and not isolated activity within Florida.

48.     Venue is proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## TracFone's Business Model

49.     TracFone provides prepaid wireless telecommunications services in the United States, which it markets under several different brand names, including TracFone Wireless, NET10 Wireless, Total Wireless, Safelink Wireless, Straight Talk, Telcel América, Simple Mobile, Walmart Family Mobile, and Page Plus.[3]

50.     TracFone's service enables its customers to prepay for their wireless service by purchasing airtime branded for each of the TracFone brands to be used on specifically manufactured TracFone Phones.

51.     TracFone Phones and airtime cards are sold at local and national retailers such as Walmart, or customers can make purchases directly from TracFone over various authorized websites or by phone.

52.     TracFone customers load prepaid airtime onto their TracFone Phones using unique codes identified on the airtime cards or the airtime can be purchased by the consumer at a retailer, by phone or through TracFone's website.

53.     TracFone subsidizes its customers' acquisition of TracFone Phones by providing various financial incentives, including selling TracFone Phones for substantially less than the wholesale price paid by TracFone.

54.     TracFone recoups its investment in these financial incentives through revenue earned on the sale of TracFone prepaid airtime that is required to transmit and receive calls, text messages, and data on the TracFone Phones.

55.     Manufacturers produce wireless phones specifically for TracFone and/or install special proprietary software, developed and owned by TracFone ("TracFone Software"), onto the TracFone Phones.

56.     Among other things, the TracFone Software is designed to prevent TracFone Phones from being used without loading airtime, and to prevent unauthorized use of TracFone Phones on other wireless networks.

---

[3] TracFone is a mobile virtual network operator or "MVNO." The wireless telecommunications networks used to transmit voice, text, and data services are owned and operated by licensed facilities-based wireless carriers such as AT&T, Verizon, Sprint and T-Mobile, not TracFone. TracFone contracts with facilities-based wireless providers to purchase airtime on their networks for use by TracFone's customers. *See Communications Marketplace Report,* 18 FCC Rcd. 181 at p. 5, ¶ 7.

### TracFone's Trademark Rights

57.     TracFone owns federal trademark registrations for the standard character marks for TRACFONE®, NET10®, TOTAL WIRELESS®, STRAIGHT TALK®, SIMPLE MOBILE®, and PAGEPLUS® and for the stylized TRACFONE®, TOTAL WIRELESS®, STRAIGHT TALK®, and SIMPLE MOBILE® marks, and for the ◎® "spiracle logo" (collectively, the "TracFone Wireless Marks"). TracFone has common law rights to the stylized NET10 and PAGEPLUS marks ("Common Law Marks"). Copies of the certificates of registration issued by the United States Patent and Trademark Office are attached as **Composite Exhibit A**. The stylized marks are depicted below:



The TracFone Wireless Marks and Common Law Marks will collectively be referred to as the "TracFone Marks."

58.     TracFone uses the TracFone Marks on and in connection with its telecommunications products and services.

59.     TracFone has expended significant efforts and expense in promoting, using, and protecting the TracFone Marks. Such efforts and expense have resulted in TracFone having achieved widespread recognition of the TracFone Marks.

60.     TracFone Marks have become an intrinsic and essential part of the valuable goodwill and property of TracFone, which protects the TracFone Marks. The TracFone Marks are well established and well known to customers and the trade as symbols identifying and distinguishing TracFone's products and services, and signifying distinctive products and services of high quality. Only TracFone and its expressly authorized, affiliated agents are permitted to use the TracFone Marks. The TracFone Marks are valid, distinctive, protectable, famous, have acquired secondary meaning and are associated exclusively with TracFone.

61.     Defendants are not in any way or for any purpose affiliated with TracFone and, therefore, cannot use the TracFone Marks.

62.   TracFone has not authorized Defendants to use the TracFone Marks to buy, transport or sell TracFone Phones.

63.   Defendants' unlawful use of the TracFone Marks began after TracFone's Marks became famous and acquired distinctiveness.

64.   Plaintiff's certificates of registration are prima face evidence of the validity of the registered trademarks and of Plaintiff's exclusive rights to use and affix the registered trademarks in commerce in connection with the goods or services specified in the certificate of registration.

### TERMS AND CONDITIONS
### REGARDING THE USE OF TRACFONE PHONES

65.   TracFone Phones are sold subject to written terms and conditions ("Terms and Conditions"), which restrict and limit the sale and use of the TracFone Phones. The Terms and Conditions for the various TracFone brands are attached as **Composite Exhibit B**.

66.   These Terms and Conditions are set forth in printed inserts that are included with the purchase of TracFone Phones.

67.   These Terms and Conditions are also publicly available on TracFone's websites, including *inter alia*, www.tracfone.com; www.straighttalk.com; www.total-wireless.com; www.net10wireless.com; www.safelinkwireless.com; www.simplemobile .com; and www.page-pluscellular.com.

68.   Customers indicate their agreement to be bound by the Terms and Conditions in various ways, including by purchasing the TracFone Phones in packaging that conspicuously indicates that the purchase, activation, and/or use of the TracFone Phones constitutes their agreement to the Terms and Conditions.

69.   Customers may also indicate their agreement to the Terms and Conditions by clicking the appropriate buttons on authorized websites when making a purchase online or by agreeing to them orally when making a purchase by phone.

70.   All of the methods used by TracFone for obtaining its customers' agreement to the Terms and Conditions are legally valid and appropriate.

71.   The Terms and Conditions constitute a valid and binding contract between TracFone and each of its customers.

9

72.     The Terms and Conditions are also a valid and binding contract with downstream purchasers who have an indirect connection to TracFone.

73.     The Terms and Conditions, and language on the packaging containing TracFone Phones, require TracFone Phones to be used solely on TracFone's wireless network unless the requirements of TracFone's unlocking policy are satisfied.

74.     Customers may review TracFone's unlocking policy online at www.tfwunlockpolicy.com.

75.     The www.tfwunlockpolicy.com website also allows customers to enter their phone number and TracFone Phone serial number to determine whether it is eligible for unlocking.

76.     The Terms and Conditions state that TracFone products and services are intended for use by the consumer and not for resale.

77.     Federal courts in this District and throughout the country have found that the Terms and Conditions constitute a valid and binding contract between TracFone and purchasers of its TracFone Phones.[4]

### DEFENDANTS' MISCONDUCT

78.     TracFone has discovered that, although large quantities of its TracFone Phones are being purchased throughout the United States, a significant number of these TracFone Phones are not being activated and used on the TracFone network.

79.     Instead, entities and individuals such as Defendants and their co-conspirators, with no intention of lawfully connecting to or using TracFone Phones on the

---

[4] *See, e.g., TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*, 843 F. Supp. 2d 1284, 1298 (S.D. Fla. 2012) (Martinez, J.); *TracFone Wireless, Inc. v. Bequator Corp., Ltd.*, 2011 WL 1427635, at *8-9 (S.D. Fla. April 13, 2011) (Hoeveler, J.); *TracFone Wireless, Inc. v. SND Cellular, Inc.*, 715 F. Supp. 2d 1246, 1259 (S.D. Fla. 2010) (Graham, J.); *TracFone Wireless, Inc. v. Anadisk LLC*, 685 F. Supp. 2d 1304, 1315 (S.D. Fla. 2010) (King, J.); *TracFone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1364 (S.D. Fla. 2009) (Gold, J.); *TracFone Wireless, Inc. v. Narula*, 2008 WL 11407177, at *7 (S.D. Fla. Jan. 10, 2008) (Huck, J.); *TracFone Wireless, Inc. v. Zip Wireless Products, Inc.*, 716 F. Supp. 2d 1275, 1286 (N.D. Ga. 2010) (Batten, J.); *TracFone Wireless, Inc. v. Brooks*, 60 F. Supp. 3d 734, 735 (N.D. Tex. 2008) (Lindsay, J.); *TracFone Wireless, Inc. v. Skynet Wholesale Distributors, Inc.*, 2008 WL 10889773, at *1 (S.D. Tex. May 5, 2008) (Jordan, J.). The Eleventh Circuit has favorably relied on Judge Martinez's opinion in *Pak China Group* as a paradigmatic example of a shrink wrap contract. *See Dye v. Tamko Bldg. Prod., Inc.*, 908 F.3d 675, 681 (11th Cir. 2018).

TracFone network, are fraudulently misappropriating TracFone Phones by purchasing and reselling them in bulk quantities.

80.     Defendants and/or their co-conspirators or Runners operating on their behalf or at their direction are improperly exploiting retailers' tax exempt identification numbers registered to closely-held corporations, thus avoiding paying sales tax and increasing their earning potential when purchasing TracFone Phones in furtherance of the Scheme.

81.     The TracFone Phones are purchased, either directly by Defendants or through their co-conspirators, and then sold for substantial financial gain and shipped overseas, where they can be used on other wireless carriers' networks.

82.     TracFone Phones are sold in packaging that clearly indicates in all capital letters that it is "NOT FOR RESALE." That language is printed on the outside of the box containing the TracFone Phone or, in some cases, in a pouch affixed to the outside of the box that contains the SIM card and Activation Information. In either case, the language is prominent and visible from the outside of the package without opening the box.

83.     Traffickers such as Defendants and their co-conspirators sometimes remove the pouches from the box, including the SIM card contained therein, take the TracFone Phone out of its original packaging, and remove the accessories, warranties and manuals before selling and shipping the TracFone Phones overseas.

84.     The TracFone Phones are often unlocked by Defendants or their co-conspirators to raise their resale market value and prepare them for use on foreign carriers. Defendants undertake these actions to increase their earning potential.

85.     Once a TracFone Phone is unlocked or shipped overseas to be used on other wireless networks it will no longer operate as intended on TracFone's wireless network, thereby depriving TracFone of a revenue source from which it can recoup its subsidy and other financial investment in that TracFone Phone.

86.     Defendants are not authorized TracFone dealers, distributors or retailers.

87.     Defendants and their co-conspirators operate as bulk international traffickers of new TracFone Phones.

RECENT EXAMPLE OF DEFENDANTS
INTERNATIONAL TRAFFICKING PHONES IN DUBAI

88.     A recent example of Defendants' illicit bulk international trafficking in TracFone Phones involved large shipments of Phones from New York to Dubai, in the United Arab Emirates. TracFone's wireless network provides service only in the United States (including Puerto Rico and the U.S. Virgin Islands). TracFone has never provided wireless service in the United Arab Emirates.

89.     TracFone learned of this recent misconduct from another handset trafficker named Sair Ali ("Ali"). An Affidavit from Ali detailing Defendants' recent transactions and attaching relevant documents as exhibits is attached as **Composite Exhibit C**.

90.     Ali is the owner and principal of Angelus Trading, FZC, a UAE Free Zone Company with its principal place of business located at Business Centre 4, 8th Floor, RAK Free Trade Zone, Al Nakheel Ras Al Khaimah, United Arab Emirates. Exhibit C, ¶ 4.

91.     Ali is also the Chief Executive Officer of Adpress, FCZ, a UAE Free Zone Company with its principal place of business located at Warehouse H02, Dubai Airport Free Zone, PO Box 372015, Dubai, United Arab Emirates. Exhibit C, ¶ 5.

92.     Defendants Butt, Shoaib, Khan, Warraich, and Awais (the "CNT Defendants") have done substantial business with Ali and his companies in Dubai through CNT Wireless a/k/a CellnTell. Ali's primary contact person at CNT Wireless is Defendant Butt. Exhibit C, ¶ 9.

93.     From February 2018 to March 2018, CNT Wireless sold Ali at least 8,124 phones, of which 7,955 were new TracFone branded Apple iPhones, specifically under TracFone's Total Wireless and Straight Talk brands. Exhibit C, ¶¶ 11-12.

94.     Ali paid CNT Wireless more than $1.8 million for those 7,955 TracFone Phones. Exhibit C, ¶ 12, and Exhibit 1 thereto.

95.     In addition, the CNT Defendants purchased for resale TracFone Phones originally bound for Ali in Dubai from another known handset trafficker based in New Jersey and Miami, Nektova Group, LLC.

96.     Defendant Vali has also done substantial business with Ali and his companies in Dubai through SK Mobile. Ali's primary contact person at SK Mobile is Defendant Vali. **Composite Exhibit D**, ¶ 9.

97.     From February 2018 to March 2018, SK Mobile sold Ali at least 7,343 phones, of which 5,182 were new TracFone branded Apple iPhones, specifically under TracFone's Total Wireless and Straight Talk brands. Exhibit D, ¶¶ 11-12.

98.     Ali paid SK Mobile more than $1.1 million for those 5,182 TracFone Phones. Exhibit D, ¶ 12, and Exhibit 1 thereto.

99.     Defendants Greenwald and Edelkopf have also done substantial business with Ali and his companies in Dubai through SGM Socher. Ali's primary contact person at SGM Socher is Defendant Edelkopf. **Composite Exhibit E**, ¶ 9.

100.    From January 2018 to March 2018, SGM Socher sold Ali at least 3,087 phones, of which 2,761 were new TracFone branded Apple iPhones, specifically under TracFone's Total Wireless and Straight Talk brands. Exhibit E, ¶¶ 11-12.

101.    Ali paid SGM Socher more than $600,000 for those 2,761 TracFone Phones. Exhibit E, ¶ 12, and Exhibit 1 thereto.

102.    TracFone's investigation has revealed that Defendant Charlop and his company Simtec Trading are associated with Defendants Greenwald and Edelkopf in their trafficking efforts.

103.    Defendant Gupta has also done substantial business with Ali and his companies in Dubai through SD Communications. Ali's primary contact person at SD Communications is Defendant Gupta. **Composite Exhibit F**, ¶ 9.

104.    From February 2018 to March 2018, SD Communications sold Ali at least 1,564 phones, of which 1,089 were new TracFone branded Apple iPhones, specifically under TracFone's Total Wireless and Straight Talk brands. Exhibit F, ¶¶ 11-12.

105.    Ali paid SD Communications more than $250,000 for those 1,089 TracFone Phones. Exhibit F, ¶ 12, and Exhibit 1 thereto.

106.    Neither Ali nor any entity with which he is affiliated is or has ever been an authorized dealer or reseller of TracFone products or services. Exhibit C, ¶ 8; Exhibit D, ¶ 8; Exhibit E, ¶ 8; and Exhibit F, ¶ 8.

107.    Ali understood that the TracFone Phones he purchased from these Defendants were originally obtained by Runners who had no intention of activating or using them on TracFone's wireless telecommunications network, but instead the Runners purchased the TracFone Phones on behalf of Defendants and their co-

conspirators solely for the purpose of reselling the TracFone Phones for financial gain. Exhibit C, ¶ 13; Exhibit D, ¶ 13; Exhibit E, ¶ 13; and Exhibit F, ¶ 13.

108.   Ali similarly purchased the TracFone Phones from these Defendants with no intention of using them on TracFone's wireless telecommunications network, but rather to resell them for profit to distributors in other countries around the world. Exhibit C, ¶ 14; Exhibit D, ¶ 14; Exhibit E, ¶ 14; and Exhibit F, ¶ 14.

109.   Defendants shipped the TracFone Phones from the United States to Ali in Dubai, and Ali paid for the phones through cross border fund transfers. Exhibit C, ¶ 17; Exhibit D, ¶ 17; Exhibit E, ¶ 17; Exhibit F, ¶ 17; and Exhibits 1 thereto.

110.   Ali has conducted business with Defendants for approximately one year. Exhibit C, ¶ 9; Exhibit D, ¶ 9; Exhibit E, ¶ 9; and Exhibit F, ¶ 9.

### DEFENDANTS' ONGOING
### PHONE TRAFFICKING ACTIVITY

111.   In September 2016, CellnTell participated in the annual CTIA/MWC conference where their representative told TracFone's investigator that they deal in TracFone branded handsets.

112.   In September 2017, the CNT Defendants engaged in conversations with TracFone's undercover investigators regarding their handset trafficking business and have sold the investigators dozens of new TracFone Phones.

113.   In September 2017, the CNT Defendants were offering thousands of new handsets for sale, as described below.

114.   On September 26, 2017, Butt advised TracFone's investigators that the CNT Defendants sell 500-1000 handsets every day and have at least one "VIP" buyer that alone purchases 5,000 handset each month. A copy of the WhatsApp communication is attached as **Composite Exhibit G**, at 1.

115.   On September 28, 2017, Butt advised TracFone's investigators that the CNT Defendants had 400 Simple Mobile Phones for sale, which he would unlock for an extra charge.

116.   In October 2017, the CNT Defendants sold TracFone's investigators 20 Simple Mobile Samsung On5 Phones, which were paid for by wire transfer to CNT Wireless, LLC. **Exhibit G** at 2.

117. The invoice for the sale was issued from CellnTell, in Ontario, Canada. **Exhibit H**.

118. The CNT Defendants directed TracFone's investigators to make the wire transfer payable to CNT Wireless in Glen Oaks, New York. **Exhibit G**, at 3. A copy of the wire transfer receipt is attached as **Exhibit I**.

119. The CNT Defendants shipped the package to TracFone's investigators in Philadelphia, Pennsylvania. A photo of the shipping label is attached as **Exhibit J**.

120. When the TracFone Phones arrived, the original wrapping on the TracFone Phones had been removed and the packaging had been opened. A photo of the TracFone Phones as received is attached as **Exhibit K**.

121. TracFone confirmed that the TracFone Phones had been unlocked from TracFone's wireless telecommunication network, indicating that they were now able to operate on other cellular networks. The CNT Defendants, or those acting pursuant to their instructions, performed an unlocking procedure on the TracFone Phones prior to resale.

122. TracFone investigated the IMEIs[5] of the 20 TracFone Phones and learned that they originated from Dollar General stores in Arizona, Georgia, Louisiana, Nevada, and Texas.

123. On October 26, 2017, Butt revealed that the CNT Defendants sell around 20,000 prepaid handsets each month. A copy of the WhatsApp communication is attached as **Exhibit G** at 4.

124. On November 2, 2017, the CNT Defendants sold TracFone's investigators an additional 32 new Simple Mobile Samsung On5 Phones.

125. The invoice for the sale was issued from CellnTell, in Ontario, Canada, to TracFone's investigators in Miami, Florida. A copy of the invoice is attached as **Exhibit L**.

126. The CNT Defendants directed TracFone's investigators to make the wire transfer payable to CNT Wireless in Glen Oaks, New York.

127. The CNT Defendants shipped the TracFone Phones to TracFone's investigators in Miami, Florida. A copy of the shipping label is attached as **Exhibit M**.

128. The package included TracFone Phones that were unwrapped from the original packaging.

---

[5] "IMEI" stands for International Mobile Equipment Identity, and is a unique electronic serial number associated with a wireless device.

129.    TracFone investigated the IMEIs of the 32 TracFone Phones and learned that they were obtained from Dollar General stores in California, Georgia, Louisiana, Missouri, North Carolina, South Carolina, and Texas.

130.    From April to June 2018, the CNT Defendants posted inventory lists advertising thousands of handsets they had available for resale, including TracFone Phones. A copy of the WhatsApp communication is attached as **Exhibit G**, at 5-10.

131.    In July 2018, the CNT Defendants sold TracFone's investigators 10 new Walmart Family Mobile Samsung Galaxy J7 Pro devices.

132.    The invoice for the sale was issued from CNT Wireless LLC, in Getzville, New York. A copy of the invoice is attached as **Exhibit N**.

133.    The CNT Defendants provided wire transfer information for CNT Wireless LLC. *See* **Exhibit G**, at 11; a copy of the wire transfer is attached as **Exhibit O**.

134.    The CNT Defendants shipped the package to TracFone's investigators in Miami Gardens, Florida. A photo of the shipping label is attached as **Exhibit P**.

135.    When TracFone's investigators received the TracFone Phones from the CNT Defendants, the individual phones had been both removed from their original wrapping and the boxes opened.

136.    TracFone confirmed that the TracFone Phones had been unlocked from TracFone's wireless telecommunication network. The CNT Defendants, or those acting pursuant to their instructions, performed an unlocking procedure on the TracFone Phones prior to resale.

137.    TracFone investigated the IMEIs of the 10 TracFone Phones and learned that they had been purchased at various Walmart stores throughout different states.

138.    In April 2018, Defendants Charlop and Simtec Trading were advertising 1,500 Total Wireless iPhone 6 devices for resale.  A copy of the WhatsApp communication is attached as **Composite Exhibit Q**, at 1.

139.    In May 2018, TracFone investigators met with Defendants Charlop and Simtec Trading near their warehouse in Lakewood, New Jersey, to discuss their handset trafficking business.

140.    Defendants Charlop and Simtec Trading informed TracFone's investigators that they had approximately 7,000 TracFone iPhone 6 Phones in stock.

141.    Defendants Charlop and Simtec Trading stated that they knew how to order product online on retailer websites without getting flagged.

142.    Defendant Charlop explained to TracFone's investigators how he and his business associates at Simtec Trading worked with others to unlock TracFone Phones before they were resold.

143.    Defendants Charlop and Simtec Trading also stated that they had thousands of iPhone 6 phones stored in a warehouse in Dubai, offering to pay TracFone's investigators if they were able to unlock the TracFone Phones.

144.    At the conclusion of the meeting, Defendants Charlop and Simtec Trading sold 5 Total Wireless iPhone 6 devices to TracFone's investigators for $950. A copy of the invoice from the purchase is attached as **Exhibit R**.

145.    In October 2018, Defendant Charlop sent TracFone's investigators an updated inventory list in their possession available for resale, including 100 Total Wireless Samsung Galaxy J3 Luna Pro devices that he had for resale.  A copy of the WhatsApp communication is attached as **Exhibit Q**, at 2.

146.    On November 13, 2018, TracFone's investigators visited the Defendants' warehouse in Lakewood, New Jersey, where they met with Defendant Charlop.

147.    Defendant Charlop informed TracFone's investigators that he was able to purchase TracFone Phones in bulk through online purchasing and by utilizing his team of Runners in the New York and New Jersey area.

148.    Defendant Charlop further informed TracFone's investigators that his brother financially backs his trafficking business with funds to purchase electronics and cellular handsets.

149.    Defendant Charlop sold TracFone's investigators 11 new Total Wireless iPhone SE handsets for $110 per TracFone Phone, for a total of $1,200.

150.    Defendant Charlop further informed TracFone's investigators that he could get new Simple Mobile iPhones as well.

151.    TracFone investigated the IMEIs of the 11 TracFone Phones purchased and learned that they were obtained from walmart.com by the following individuals in the New York and New Jersey area who are believed to be Runners: Teddy Bahary, Shoshana Pepper, Yaakov Weinstein, Yechiel Munk, Eliyahu Harstein, and Sruly Feldheim.

SUBSTANTIAL HARM CAUSED
BY DEFENDANTS' MISCONDUCT

152.    Defendants' misconduct harms TracFone and its relationships with its retailers, dealers and legitimate customers.  Defendants' trafficking prevents TracFone supplying sufficient TracFone Phones to satisfy the demand from legitimate consumers who, resulting from their need to purchase a phone, must obtain their wireless products and services from other providers. TracFone is thereby deprived of the opportunity to earn profits by providing wireless services to legitimate TracFone consumers on the TracFone Phones trafficked by Defendants and their co-conspirators. This is particularly true in the case of the popular iPhone models—a valuable phone that is sold by several other mobile phone service providers.

153.    As a result of Defendants' conduct, TracFone loses, and has no ability to recoup its subsidies, investments in sales, marketing and other expenses associated with the TracFone Phones trafficked by Defendants and their co-conspirators.

154.    TracFone suffers additional, irreparable harm when Defendants and/or their co-conspirators alter the device packaging, remove TracFone Phones from the original packaging, and/or materially alter the TracFone Phones for them to resell, because TracFone is deprived of the means to control the quality of its product.

155.    Defendants' misconduct has resulted in the dilution of the TracFone Marks; harm to TracFone's business reputation and goodwill; a greater likelihood of confusion, mistake, and deception as to the source of origin of TracFone Phones unlawfully resold by the Defendants; and confusion as to what if any relationship exists between TracFone and Defendants.

156.    Defendants' misconduct has caused TracFone financial harm. Judges in this district have routinely granted multi-million dollar judgments in TracFone's favor in cases involving the same types of improper resale schemes. *See TracFone Wireless, Inc. v. Pak China Grp. Co.*, 843 F. Supp. 2d 1284, 1303 (S.D. Fla. 2012) (Martinez, J.) (granting judgment in TracFone's favor on similar claims in the amount of $37,707,500); *TracFone Wireless, Inc. v. Bequator Corp.*, 2011 WL 1427635, at *14 (S.D. Fla. Apr. 13, 2011) (Hoeveler, J.) (granting judgment in TracFone's favor on similar claims in the amount of $46,540,000); *TracFone Wireless, Inc. v. SND Cellular, Inc.*, 715 F. Supp. 2d 1246, 1263 (S.D. Fla. 2010) (Graham, J.) (granting judgment in TracFone's favor on

18

similar claims in the amount of $11,370,000); *TracFone Wireless, Inc. v. Anadisk LLC*, 685 F. Supp. 2d 1304, 1319 (S.D. Fla. 2010) (King, J.) (granting judgment in TracFone's favor on similar claims in the amount of $12,375,000); *TracFone Wireless, Inc. v. Tropical Exp., Inc.*, 2009 WL 3055386, at *4 (S.D. Fla. Sept. 25, 2009) (King, J.) (granting judgment in TracFone's favor on similar claims in the amount of $5,000,000). TracFone expects to seek a similar award in this case.

### OTHER CIVIL LITIGATION
### AGAINST PHONE TRAFFICKERS

157.   Federal courts have recognized that conduct similar to Defendants' conduct is unlawful.

158.   In addition to TracFone, T-Mobile, Sprint, Nokia, Motorola, and AT&T have filed multiple lawsuits in numerous federal courts across the country against other traffickers engaged in the practice of defrauding legitimate customers by acquiring bulk quantities of wireless telephones and reselling them for their own enrichment. Those companies have succeeded in obtaining Final Judgments and Permanent Injunctions. Copies of several examples of Final Judgments and Permanent Injunctions obtained by other companies are attached as **Composite Exhibit S**. A defendant in one case who continued trafficking in phones in violation of an injunction issued by the U.S. District Court for the Southern District of Texas was charged with criminal contempt of court and sentenced to serve 57 months in prison. *See* **Composite Exhibit T**.

159.   In January 2019, AT&T obtained a Final Judgment and Permanent Injunction against Defendants CNT Wireless, CellnTell, and Sajid Butt, for trafficking in AT&T branded handsets. A copy of the Final Judgment obtained is attached as **Composite Exhibit U**.

### CRIMINAL INVESTIGATION AND
### PROSECUTION OF PHONE TRAFFICKING

160.   Phone traffickers like Defendants have been the subject of numerous criminal investigations and prosecutions across the country. Some examples[6] are:

---

[6] Copies of court documents, press releases, and news reports regarding these incidents are attached as **Composite Exhibit V**.

a.      In August 2014, the U.S. Attorney for the District of Minnesota announced the indictment of 20 individuals engaged in the illegal acquisition and resale of tens of thousands of smartphones to the black markets of the Middle East and China. A joint task force comprised of the U.S. Secret Service, the Minnesota Financial Crimes Task Force, and the St. Paul Police Department investigated and then apprehended members of the "Mustafa Organization," who had been using Runners, engaged in contract and subscription fraud, and robbery to acquire large quantities of subsidized phones for overseas resale.

b.      In March 2013, the then California Attorney General, Kamala Harris, charged two individuals with trafficking nearly $4 million in wireless phones to Hong Kong over an 8 month period.

c.      On or about February 25, 2013, federal law enforcement authorities, including agents from the Federal Bureau of Investigation, the United States Secret Service, and the Bureau of Alcohol, Tobacco, Firearms and Explosives, raided a warehouse belonging to a phone trafficking company called Wireless Buybacks in Elkridge, Maryland, pursuant to a search warrant and found the facilities were being used to harbor stolen Sprint Phones. Sprint filed suit against Wireless Buybacks and its affiliates the following day.

d.      On August 21, 2012, Homeland Security agents and SWAT teams conducted a raid on facilities operated by handset trafficker Ace Wholesale and on the home of the company's CEO, Jason Floarea. Later the same day, Sprint filed suit in federal court against Ace Wholesale, Floarea, and several affiliated entities and persons asserting handset trafficking claims similar to those asserted here. On April 16, 2015, Mr. Floarea was sentenced to 12 months imprisonment followed by 24 months of supervised release, plus restitution to Sprint of $600,000.00 for violation of 18 U.S.C. § 2314 in connection with trafficking Sprint Phones.

e.      An FBI sting operation in Philadelphia that began with wireless phone trafficking resulted in the conviction of 16 individuals on terrorism charges, when it turned out that the proceeds from their phone trafficking and other illegal conduct was being funneled to the terrorist organization Hezbollah.

## COUNT 1

### BREACH OF CONTRACT

161.    TracFone reasserts the allegations set forth in Paragraphs 1 through 156 above as though fully set forth herein.

162.    By purchasing TracFone Phones or inducing or causing Runners and others to purchase TracFone Phones on Defendants' behalf, Defendants acknowledged and agreed to the Terms and Conditions included with each TracFone Phone.

163.    The Terms and Conditions constitute a valid binding contract between TracFone and Defendants.

164.    TracFone has performed or tendered performance in full compliance with the Terms and Conditions.

165.    Defendants have breached the Terms and Conditions by reselling TracFone Phones.

166.    In addition, and as a separate and independent breach of contract, Defendants also breached the Terms and Conditions by using the TracFone Phones in a manner that could damage or adversely affect TracFone. TracFone has suffered and is entitled to recover from Defendants' actual damages as a result of Defendants' breach of the Terms and Conditions.

167.    The Terms and Conditions provide that any violation of the Terms and Conditions entitles TracFone to an amount not less than $5,000 per TracFone Phone, which Defendants previously agreed constituted a reasonable approximation of TracFone's damages in light of their anticipated breach and is not a penalty.

## COUNT 2

### CONSPIRACY TO INDUCE BREACH OF CONTRACT

168.    TracFone reasserts the allegations set forth in Paragraphs 1 through 156 above as though fully set forth herein.

169.    Defendants solicit Runners and others to purchase and aggregate TracFone Phones in bulk for the benefit of Defendants.

170.    Defendants' active solicitation of Runners and other purchasers includes contacting them and requesting that they obtain specific brands and models of TracFone Phones or sell to Defendants the TracFone Phones they already purchased.

171.    The Terms and Conditions constitute a valid binding contract between TracFone and the Runners and other original purchasers of the TracFone Phones.

172.    Separate and apart from TracFone's contracts with Defendants, Defendants had knowledge of the contracts between TracFone and the Runners or other original purchasers, and intended to, and in fact did, induce them directly or indirectly to breach their contracts with TracFone.

173.    The breaches of the contracts were proximately caused by Defendants' misconduct and Scheme.

174.    TracFone suffered damages as a result.

COUNT 3

UNJUST ENRICHMENT[7]

175.    TracFone reasserts the allegations set forth in Paragraphs 1 through 156 above as though fully set forth herein.

176.    By acquiring TracFone Phones at a price that was less than TracFone's acquisition cost for the Phones, Defendants have obtained pecuniary benefits from TracFone through the subsidies and other financial incentives that TracFone intended to benefit legitimate consumers who use TracFone's network.

177.    Defendants' resale of the acquired TracFone Phones at less than the manufacturer cost of the TracFone Phones has led to significant financial gain to Defendants and caused significant pecuniary harm to TracFone.

178.    Defendants targeted and acquired such pecuniary benefits from TracFone voluntarily and with knowledge of how they would gain from said pecuniary benefits.

179.    Defendants have retained the pecuniary benefits under such circumstances that make it unjust and inequitable for Defendants to retain the pecuniary benefits without paying TracFone the fair value of the pecuniary benefits that Defendants acquired.

---

[7] Count 3 is pled in the alternative to the extent there may be an inadequate remedy at law as to some of Defendants' misconduct. *See TracFone Wireless, Inc. v. Simply Wireless, Inc.*, 275 F. Supp. 3d 1332, 1335 (S.D. Fla. 2017) (Moreno, J.) (recognizing that multiple theories can be brought and pled in the alternative).

180. To the extent this claim is considered to be in equity, TracFone suffered damages and is without an adequate remedy at law.[8]

## COUNT 4

### FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114 [§ 32(1) OF THE LANHAM ACT]

181. TracFone reasserts the allegations set forth in Paragraphs 1 through 156 above as though fully set forth herein.

182. Defendants' conduct constitutes use of certain federally registered TracFone Wireless Marks without authorization in connection with their Scheme to resell and offer for resale TracFone Phones, which downstream customers will discover have been materially altered from their original state as they do not include the warranties, manuals and related items and/or may have had their SIM card and Activation Information pouches removed, that constitute part of the TracFone Phone package.

183. Defendants' use of federally registered TracFone Wireless Marks in connection with the sale of TracFone Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' infringing products, and the perception of a relationship between TracFone and Defendants.

---

[8] The Third DCA has held that an unjust enrichment claim is a claim at law. *See Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018). TracFone is mindful that there appears to be a conflict among Florida's intermediate appellate courts on this issue. *Compare Duty Free World*, 253 So. 3d at 695, *and M.I. Indus. USA Inc. v. Attorneys' Title Ins. Fund, Inc.*, 6 So. 3d 627, 629 (Fla. 4th DCA 2009) ("this court has squarely held that an action for unjust enrichment is an action at law"), *and Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007) ("action for unjust enrichment is an action at law, not in equity"), *with 14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc.,* 43 So. 3d 877, 880 (Fla. 1st DCA 2010) ("In Florida, a claim for unjust enrichment is an equitable claim…."), *and Montage Grp., Ltd. v. Athle-Tech Computer Sys., Inc.*, 889 So. 2d 180, 196 (Fla. 2d DCA 2004) (referring to the "equitable remedy of unjust enrichment"). However, *Duty Free World* controls here because this case is filed in the Miami Division of the Southern District of Florida (where TracFone is based), which shares the exact geographical boundaries of the Eleventh Judicial Circuit of Florida, and appeals from the Eleventh Judicial Circuit of Florida are taken to the Third DCA. *See, e.g., Inlet Condo. Ass'n, Inc. v. Childress Duffy, Ltd., Inc.*, 615 F. App'x 533, 539 (11th Cir. 2015) and *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 775 (11th Cir. 2000).

184.     Defendants' unauthorized use of certain federally registered TracFone Wireless Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of TracFone.

185.     Defendants' use of certain federally registered TracFone Wireless Marks in connection with the resale of TracFone Phones, which do not include warranties, manuals, SIM cards and related items made part of the TracFone Phone package, constitutes a misappropriation of TracFone's distinguishing and identifying federally registered trademarks that were created as a result of significant effort and expense by TracFone over a long period of time.

186.     Defendants' use of certain federally registered TracFone Wireless Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with TracFone, and is likely to mislead the public into believing that Defendants' products and services originate from, are in some way affiliated with, or are sponsored, authorized, approved or sanctioned by TracFone.

187.     Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, TracFone and the reputation and goodwill of TracFone, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of TracFone. TracFone is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

188.     Defendants' aforesaid acts constitute willful infringement of TracFone's aforementioned federally registered trademarks in violation of 15 U.S.C. § 1114.

## COUNT 5

### FEDERAL COMMON LAW TRADEMARK INFRINGEMENT AND FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(a)(1)(A) AND (B) [§ 43(a) OF THE LANHAM ACT]

189.     TracFone reasserts the allegations set forth in Paragraphs 1 through 156 above as though fully set forth herein.

190.     Defendants' conduct constitutes use of certain TracFone Marks without authorization in connection with their conspiracy to resell and offer for sale TracFone Phones, which downstream customers will discover have been altered from their original

state and may not include the warranties, accessories, manuals and related items and/or have had their SIM cards and Activation Information pouches removed, that constitute part of the TracFone Phone package.

191.    Defendants' use of certain TracFone Marks in connection with the resale of TracFone Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' products, and the perception of a relationship between TracFone and Defendants.

192.    Defendants' unauthorized use of certain TracFone Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of TracFone.

193.    Defendants' use of certain TracFone Marks in connection with the resale of TracFone Phones, which do not include warranties, manuals, SIM Cards and related items made part of the TracFone Phones package, constitutes a misappropriation of the distinguishing and identifying TracFone Marks that were created as a result of significant effort and expense.

194.    Defendants' use of certain TracFone Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with TracFone, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by TracFone.

195.    Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, TracFone and the reputation and goodwill of TracFone, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of TracFone.

196.    TracFone is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

197.    Defendants' use of certain TracFone Marks in commercial advertising or promotion misrepresents the nature, characteristics and/or qualities of their infringing products. Defendants' advertising and promotion is false or misleading. Defendants'

advertising and promotion deceives or has the capacity to deceive customers and consumers. The deception and misrepresentations have a material effect on the purchasing decisions and affect interstate commerce.

198.   Defendants' activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B).

199.   TracFone is entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

200.   Defendants knew or should have known that TracFone is the owner and/or authorized licensee of the TracFone Marks, and that Defendants had no legal right to use the TracFone Marks on their infringing products. Defendants are engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, so as to justify the assessment of exemplary damages and an award of Plaintiff's lost profits, Defendants' earnings, and Plaintiff's attorneys' fees.

## COUNT 6
### CONTRIBUTORY TRADEMARK INFRINGEMENT

201.   TracFone reasserts the allegations set forth in Paragraphs 1 through 156 above as though fully set forth herein.

202.   By misappropriating and using at least one of the TracFone Marks in connection with the Scheme, Defendants knowingly aided and enabled distributors and/or resellers of the products to market them to members of the general public in a way that infringes at least one of the TracFone Marks by placing in the hands of distributors and/or resellers an instrument of consumer deception.

203.   Defendants' unlawful, unauthorized, and unlicensed sale of the TracFone Phones has contributed to the creation of express and implied misrepresentations that the TracFone Phones, as sold by Defendants, were created, authorized or approved by TracFone, and includes warranties.

204.   Upon information and belief, Defendants' conduct leads to post-sale confusion by causing consumers who purchase TracFone Phones altered by Defendants to believe that they are purchasing handsets approved by TracFone and containing original warranties.

205.    Defendants' conduct constitutes contributory infringement in violation of the Trademark Act. Defendants' conduct is intentional, malicious and willful.

206.    TracFone has been damaged and continues to suffer damages as a result of Defendants' actions.

207.    There is no adequate remedy at law to fully compensate TracFone for the harm caused by Defendants' actions.

**COUNT 7**

**UNFAIR COMPETITION**

208.    TracFone reasserts the allegations set forth in Paragraphs 1 through 156 above as though fully set forth herein.

209.    Defendants' conduct in purchasing and/or inducing Runners or others to purchase the TracFone Phones, disabling or unlocking, inducing others to disable or unlock, and/or assisting others to disable or unlock the TracFone Phones, and reselling and/or assisting others to resell the TracFone Phones as new for activation on other wireless networks or overseas constitutes unfair competition under the common law of the State of Florida.

210.    Defendants' conduct in selling, inducing others to sell, and/or assisting others to sell unlocked TracFone Phones for the purpose of being resold, which undermines TracFone's subsidy program, constitutes unfair competition under the common law of the State of Florida.

211.    Defendants' use of at least one of the TracFone Marks in connection with the resale of unlocked and/or materially altered TracFone Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' materially altered products and services, and the perception of a relationship between TracFone and Defendants.

212.    Thus, Defendants have also engaged in unfair competition with TracFone in violation of the common law of Florida by selling and/or offering, and promoting their products with the intention of trading upon the goodwill established by TracFone, and are thereby misappropriating the benefits of substantial effort and money expended by TracFone in establishing its rights in and to the TracFone Marks.

213.     Defendants' actions were done in bad faith; they were intentional, malicious, and willful, and have caused substantial harm to TracFone.

214.     TracFone is entitled to appropriate relief as prayed for hereinafter, including injunctive relief.

## COUNT 8
### CONVERSION

215.     TracFone reasserts the allegations set forth in Paragraphs 1 through 156 above as though fully set forth herein.

216.     Defendants have and are engaged in acts of conversion in violation of the law of the State of Florida.

217.     TracFone has the right to provide its TracFone Phones and services to the public. Defendants have no such privilege or right.

218.     Defendants knew or should have known that they obtained the Phones at a price that was less than TracFone's acquisition cost for the Phones through illegitimate means and had no legal right to advertise, use, or resell them.

219.     Defendants are wrongfully interfering with TracFone's rights to the TracFone Phones, and to the subsidies it invests in the TracFone Phones, by engaging in the Scheme.

220.     Defendants intentionally and willfully exerted dominion and ownership over the TracFone Phones.

221.     In doing so for the purpose of resale, Defendants are also converting TracFone's subsidy investment in the TracFone Phones for their own benefit.

222.     TracFone has confirmed that Defendants have shipped more than 15,000 TracFone phones to another party in Dubai. Accordingly demand for those chattels would be futile.

## COUNT 9
### FRAUD IN THE INDUCEMENT

223.     TracFone reasserts the allegations set forth in Paragraphs 1 through 156 above as though fully set forth herein.

224.     As part of their Scheme detailed above, each Defendant commits fraud by misrepresenting, conspiring to misrepresent, or instructing Runners or others to

misrepresent on their behalf, to TracFone or its authorized retailers or representatives that the TracFone Phones they purchase are being acquired for a legitimate purpose, that the TracFone Phones will be used by Defendants on TracFone's network, and that Defendants will perform in accordance with the Terms and Conditions.

225.    When Defendants acquire, conspire to acquire, or instruct Runners or others on their behalf to acquire TracFone Phones as part of their Scheme, they do not intend to use the TracFone Phones for a legitimate purpose or to activate them or maintain them on the TracFone network, or otherwise perform in accordance with the Terms and Conditions.

226.    Defendants' misrepresentations are made every time they, their co-conspirators, or Runners or others whom they have instructed to act on their behalf, purchase a TracFone Phone with the then-present intent to resell that TracFone Phone.

227.    Defendants knowingly and unjustifiably acquire the subsidized TracFone Phones for the purpose of converting TracFone's subsidy into Defendants' own pecuniary benefit.

228.    Defendants know that they are required to activate the TracFone Phones for use on the TracFone network, pay for the TracFone services, and otherwise comply with the Terms and Conditions.

229.    Defendants know the Terms and Conditions specifically prohibit the resale of TracFone Phones.

230.    Defendants intend for TracFone and TracFone's authorized retailers and representatives to rely upon the misrepresentations made by Defendants, their co-conspirators, and Runners or others acting on their behalf, in order to acquire the TracFone Phones.

231.    TracFone and TracFone's authorized retailers and representatives relied on the misrepresentations made by Defendants, their co-conspirators, and Runners or others acting on their behalf, and said reliance was reasonable under the circumstances.

232.    Defendants' actions have unjustifiably damaged and continue to unjustifiably damage TracFone.

## COUNT 10
### CIVIL CONSPIRACY

233.    TracFone reasserts the allegations set forth in Paragraphs 1 through 156 above as though fully set forth herein.

234.    An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators, including Runners, to unlawfully bulk purchase, traffic, materially alter, and resell TracFone Phones under at least one of the TracFone Marks, which results in breaches of contract, fraud, federal common law and statutory trademark infringement, common law unfair competition, contributory trademark infringement, unjust enrichment, and conversion.

235.    Each Defendant knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this complaint.

236.    TracFone has been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, TracFone demands a trial by jury on all triable issues.

### PRAYER FOR RELIEF

Plaintiff TracFone Wireless, Inc., requests that this Court enter final judgment and permanent injunctive relief in its favor and against Defendants CellnTell Distribution Inc., CNT Wireless LLC, SK Mobile LTD, SGM Socher, Inc., Simtec Trading LLC, SD Communications, Inc., Sajid Butt, Muhammad Shoaib, Farhan Ashraf Khan, Umar Warraich, Muhammad Awais, Faizan Vali, Yosef Greenwald, Levi Edelkopf, Simcha Charlop, and Manish Gupta as follows:

a.    as to Counts 1 through 10, awarding TracFone money damages, including without limitation compensatory and consequential damages, including lost profits;

b.    as to Counts 4, 5, 6, 7, 8, 9, and 10, awarding TracFone punitive and special damages;

   c. As to Counts 4, 5, and 6, awarding TracFone statutory damages, including provided for in 15 U.S.C. § 1117 and § 1125;

   d. as to Counts 4, 5, and 6, awarding TracFone its reasonable attorney's fees and costs associated with this action, as permitted by any applicable rules and statutes;

   e. as to Counts 1, 2, 4, 5, 6, and 7, granting permanent injunctive relief in favor of TracFone and against Defendants enjoining Defendants from engaging in the unlawful practices described in this Complaint; and

   f. as to Counts 4, 5, 6, and 7, requiring Defendants to deliver to TracFone their entire inventory of phones and products bearing or infringing the TracFone Marks or a confusingly similar copy thereof.

Dated: October 21, 2019   By: _____

           Aaron S. Weiss (FBN 48813)
           aweiss@carltonfields.com
           Steven M. Blickensderfer (FBN 92701)
           sblickensderfer@carltonfields.com
           Carlton Fields, P.A.
           100 S.E. Second St., Suite 4200
           Miami, Florida 33131
           Telephone: 305.530.0050

           James B. Baldinger (FBN 869899)
           jbaldinger@carltonfields.com
           Carlton Fields, P.A.
           525 Okeechobee Boulevard, Suite 1200
           West Palm Beach, Florida  33401
           Telephone: 561.659.7070

           *Attorneys for Plaintiff TracFone Wireless, Inc.*