UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:19-cv-24325

TRACFONE WIRELESS, INC.,
    *Plaintiff*,
v.

CNT WIRELESS LLC, *et al.*,
    *Defendants*.
_____/

### TRACFONE'S MOTION FOR LIMITED EXPEDITED DISCOVERY, AND FOR AN ORDER DIRECTING SERVICE ON CANADIAN DEFENDANTS BY MAIL

    Plaintiff TracFone Wireless, Inc. ("TracFone") moves, pursuant to Fed. R. Civ. P. 26(d), for entry of an order permitting TracFone to commence limited expedited discovery to obtain and preserve such evidence prior to the parties' scheduling conference pursuant to Fed. R. Civ. P. 26(f). Consistent therewith, TracFone further seeks permission to serve non-party subpoenas pursuant to Fed. R. Civ. P. 45. TracFone seeks this relief because certain non-parties have significant evidence relevant to this case, which they are under no duty to preserve and may destroy pursuant to their own corporate document retention policies.

    TracFone also moves, pursuant to Fed. R. Civ. P. 4(f), for entry of an order directing the Clerk's office to request service under the Hague Service Convention of the Complaint and Summonses on Defendants CellnTell Distribution Inc., Sajid Butt ("Butt"), Muhammad Shoaib ("Shoaib"), Farhan Ashraf Khan ("Khan"), Umar Warraich ("Warraich") and Muhammad Awais ("Awais") (collectively the "Canadian Defendants"). TracFone seeks to serve these Canadian Defendants by postal channel—mail and FedEx.

### INTRODUCTION

    As set forth in TracFone's Complaint filed earlier today [ECF No. 1], Defendants[1] are involved in an improper scheme whereby they make bulk purchases of TracFone-branded wireless handsets ("TracFone Phones") and then resell them both domestically

---

[1] The terms "Defendants" refers to all of the Canadian Defendants as well as the US-based defendants: CNT Wireless, LLC; SK Mobile, LTD.; SGM Socher, Inc.; Simtec Trading LLC; SD Communications; Faizan Vali; Yosef Greenwald; Levi Edelkopf; Simcha Charlop; and Manish Gupta.

and internationally for their own enrichment, which violates the terms and conditions of sale and infringes on TracFone's trademarks (the "Trafficking Scheme" or "Scheme").

TracFone's investigation supports that Defendants are perpetrating their Scheme using "runners"[2] who obtain the TracFone Phones, many of which are valuable iPhones, by purchasing them at big box retailers such as Walmart, Best Buy and/or Target. These runners employ tactics to evade screens, such as using multiple email addresses that are similar except for minor variations, as well as shipping addresses that are virtually identical but include inaccuracies that do not prevent product from arriving at the designated location. TracFone has reason to believe that Defendants have enlisted the help of friends, family and other as-yet-unknown co-conspirators to effectuate their Scheme.

### REQUESTED RELIEF

TracFone seeks permission to serve subpoenas directed to certain non-parties prior to the parties' scheduling conference pursuant to Fed. R. Civ. P. 26(f). Expedited discovery is appropriate in this case as certain non-parties—such as retailers (e.g., Walmart, Best Buy, Target, Dollar General), banks (e.g., Bank of America, JP Morgan Chase and Capital One), shipping/ logistics companies (e.g., FedEx, DHL and UPS), and manufacturers like Apple—are likely in possession of information relating to Defendants' Scheme but under no obligation to preserve or share such information with TracFone. Further, expedited discovery is appropriate because the alleged Scheme likely is ongoing and continuing to cause substantial and irreparable harm to TracFone.

### Good Cause Exists For TracFone to Conduct Expedited Discovery Regarding Defendants' Improper Activities

In recent months, TracFone has learned that Defendants are trafficking TracFone Phones for their own profit. *See* Declaration of Kevin Wehling, Fraud Investigations Manager for TracFone Wireless, Inc. ("Wehling Declaration."), executed October 21, 2019, and attached as **Exhibit A**, at ¶12. TracFone's investigation has revealed that Defendants perpetrate their Trafficking Scheme by purchasing bulk quantities of TracFone Phones, primarily valuable iPhones and Samsung devices. *Id.* at ¶12-13.

---

[2] A "runner" is an individual or entity that makes multiple purchases of new TracFone Devices on behalf of phone traffickers like Defendants.

Defendants then resell the devices for profit, in the process violating the terms of conditions of sale and infringing TracFone's trademarks.

TracFone's investigation has further revealed evidence of Defendants making bulk purchases at big box retailers with no intention of lawfully connecting to or using service on the TracFone wireless network. The TracFone Phones are purchased, either directly by Defendants or through their co-conspirators, and then sold for a substantial profit and shipped domestically and internationally, where they can be used on other wireless carriers' networks, or sold and shipped to other traffickers, who often add them to larger shipments headed overseas.

### Evidence Implicating Defendants from an International Handset Trafficker in Dubai

TracFone learned of Defendants' operation as bulk international traffickers of new TracFone Phones through a known handset trafficker in Dubai named Sair Ali. Ali's sworn affidavits with exhibits are attached to the Complaint as Exhibit C, D, E and F, ECF No. 1-3 through 6 (the "Ali Affidavits").

With respect to the CNT Defendants (CellNTell Distribution, CNT Wireless, Butt, Shoaib, Khan, Warraich, and Awai), from February 2018 to March 2018, they sold Ali at least 8,124 phones, of which 7,955 were new TracFone branded Apple iPhones. ECF No. 1-3 at ¶¶11-12. Ali paid the CNT Defendants more than $1.8 million for those 7,955 TracFone Phones. *Id*. at ¶12; Exhibit 1 to Ali Affidavit.

With respect to the SK Mobile Defendants (SK Mobile, Ltd. and Faizan Vali), from February 2018 to March 2018, they sold Ali at least 7,343 phones, of which 5,182 were new TracFone branded Apple iPhones. ECF No. 1-4 at ¶¶11-12. Ali paid SK Mobile Defendants more than $1.1 million for those 5,182 TracFone Phones. *Id*. at ¶12; Exhibit 1 to Ali Affidavit.

As for the SGM Socher Defendants (SGM Socher, Greenwald, and Edelkopf), from January 2018 to March 2018, they sold Ali at least 3,087 phones, of which 2,761 were new TracFone branded Apple iPhones. ECF No. 1-5 at ¶¶11-12. Ali paid SGM Socher Defendants more than $600,000 for those 2,761 TracFone Phones. *Id*. at ¶12; Exhibit 1 to Ali Affidavit. TracFone's investigation has revealed that the Simtec Trading Defendants (Simtec Trading LLC and Charlop), are associated with the SGM Socher Defendants in their trafficking efforts. Wehling Dec. at ¶18.

3

As for the SD Communications Defendants (SD Communications Inc. and Gupta),0 from February 2018 to March 2018, they sold Ali at least 1,564 phones, of which 1,089 were new TracFone branded Apple iPhones. ECF No. 1-6 at ¶¶ 11-12. Ali paid SD Communications Defendants more than $250,000 for those 1,089 TracFone Phones. *Id*. at ¶12; Exhibit 1 to Ali Affidavit.

### Evidence Of Ongoing Handset Trafficking

TracFone has further learned through its own investigation that Defendants' trafficking activity is ongoing. Beginning in September 2017, the CNT Defendants were claiming to be selling around 20,000 prepaid handsets each month, or upwards of 500-1,000 handsets each day, and they purportedly had one "VIP" buyer that was purchasing 5,000 handsets on a monthly basis. Wehling Dec. at ¶21. Defendant Butt advised TracFone's investigators that they had 400 TracFone (Simple Mobile) Phones for sale, which they could unlock for an extra charge. *Id.* at ¶21. The CNT Defendants subsequently sold TracFone's investigators 20 Simple Mobile Samsung On5 devices. *Id.* at ¶22. Upon receipt, TracFone's investigators discovered that the original packaging had been opened and the TracFone Phones had been unlocked from TracFone's network, which meant they could be used on any other wireless provider's network. *Id.* at ¶22. An analysis of the TracFone Phones' IMEIs[3] revealed they had been purchased from Dollar General stores in Arizona, Georgia, Louisiana, Nevada, and Texas. *Id*. at ¶22.

In November 2017, the CNT Defendants sold another batch of TracFone Phones to TracFone investigators, this time 32 Simple Mobile Samsung On5 TracFone Phones. *Id*. ¶23. An analysis of the TracFone Phones IMEIs revealed they had been purchased from Dollar General stores in California, Georgia, Louisiana, Missouri, North Carolina, South Carolina, and Texas. *Id*. And once again, between April to June 2018, the CNT Defendants were advertising the sale of thousands of handsets that were available for sale, including TracFone Phones. In July 2018, the CNT Defendants sold TracFone's investigators 10 Walmart Family Mobile Samsung Galaxy J7 Pro Devices, which were advertised as new. Wehling Dec. at ¶24. Upon receipt, TracFone's investigators discovered that the TracFone Phones had been unlocked. *Id*. An analysis of the IMEIs

---

[3] "IMEI" stands for International Mobile Equipment Identity, and is a unique electronic serial number associated with a wireless device.

from these TracFone Phones revealed the CNT Defendants had purchased them at various Walmart stores in Ohio, Minnesota, Washington, and Connecticut. *Id.*

The TracFone investigators also revealed that the Simtec Trading Defendants are engaged in ongoing handset trafficking. In April 2018, the Simtec Trading Defendants advertised 1,500 Total Wireless iPhone 6 phones for sale. *Id.* at ¶25. TracFone investigators subsequently met them near their warehouse in New Jersey and learned that these defendants had recently sold about 7,000 Total Wireless iPhone 6 phones to a distributor, and that they knew how to order product online on retailer websites without getting flagged. *Id*. at 23. The Simtec Trading Defendants also stated they had thousands of iPhone 6 phones stored in a warehouse in Dubai, offering to pay TracFone's investigators if they were able to unlock the TracFone Phones. *Id*. at 25. Finally, The Simtec Trading Defendants sold 5 Total Wireless iPhone 6 Devices to TracFone's investigators for $950. Wehling Dec. at ¶ 25.

Thereafter, in October 2018, the Simtec Trading Defendants advertised to TracFone's investigators a list of devices for sale that included 100 Total Wireless Samsung Galaxy J3 Luna Pro Devices. *Id.* at ¶26. TracFone investigators visited the Defendants' warehouse in New Jersey and learned additional facts concerning the Scheme of the Simtec Trading Defendants, including that they were able to purchase bulk through online purchasing and by utilizing his team of runners in the New York and New Jersey area, and that his brother financially backs the Handset Trafficking Scheme business with funds to purchase electronics and cellular handsets. *Id*. The Simtec Trading Defendants sold TracFone investigators 11 new Total Wireless iPhone SE handsets for $100 per device, totaling $1,200. *Id*. Defendant Charlop advised that he would be able to get new Simple Wireless iPhones as well. *Id*. The IMEIs of the 11 Phones revealed that they were obtained from walmart.com in New Jersey and New York by runners believed to be Teddy Bahary, Shoshana Pepper, Yaakov Weinstein, Esther Weinstein, Yechiel Munk, Eliyahu Harstein, and Sruly Feldheim. *Id*.

Based on the information received from Ali and obtained by TracFone investigators, TracFone believes that the transactions detailed in the Complaint and this Motion constitute a small fraction of the Defendants' and their co-conspirators' fraudulent and illicit domestic and international handset trafficking business. Wehling Dec. at ¶ 21.

This is causing substantial, ongoing, and irreparable harm to TracFone and its customers. Based on this ongoing harm, the breadth of the Defendants' operations, and the likelihood that the Defendants will engage in efforts to conceal their illicit businesses and destroy evidence, TracFone respectfully requests that the Court order expedited discovery on the matters presented by the Complaint.

### The Court Has Discretion to Order Expedited Discovery

Under the Federal Rules of Civil Procedure, discovery may commence before the parties have engaged in a discovery conference, if ordered by the court. Fed. R. Civ. P. 26(d) and (f). Under the rules, "the control of discovery is committed to the sound discretion of the trial court." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1322 (11th Cir. 2004). In this regard, district courts are afforded broad discretion in the scheduling of discovery. *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (the court has broad discretion to control and expedite pretrial discovery through its enforcement of the scheduling order). "[I]n the exercise of its broad discretion [the court is authorized to] alter the timing, sequence and volume of discovery." *Lindsey & Osborne P'ship, L.P. v. Day & Zimmermann, Inc.*, 2008 WL 2858786, at *2 (D. Kan. July 22, 2008).

### Expedited Discovery Is Appropriate On a Showing of Good Cause, Which TracFone Can Establish

As Judge Jordan noted during his time as a judge of this district, the federal "[c]ourts have adopted a good cause or reasonableness standard for granting expedited discovery." *Dell Inc. v. BelgiumDomains, LLC*, 2007 WL 6862341, *6 (S.D. Fla. Nov. 21, 2007) (citing *Ayyash v. Bank Al-Madina*, 223 F.R.D. 325, 327 (S.D.N.Y. 2005)). Federal courts allow parties to conduct expedited discovery in advance of a Fed. R. Civ. P. 26(f) conference where the party establishes "good cause" for such discovery. *See, e.g.*, *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275–76 (N.D. Cal. 2002); *Qwest Comm. Int'l Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613–14 (D. Ariz. 2001) (applying a good cause standard).

"Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."

*Semitool*, 208 F.R.D. at 276. "It should be noted that courts have recognized that good cause is frequently found in cases involving claims of infringement and unfair competition." *Id.* at 276. In this case, all of these bases for good cause are present, and Defendants can show no prejudice from TracFone's requested expedited discovery.

First, good cause exists where a complaint alleges claims of infringement. *Id.* at 276; *Qwest Comm.*, 213 F.R.D. at 419 ("The good cause standard may be satisfied ... where the moving party has asserted claims of infringement and unfair competition."); *VPR Internationale v. Does 1-17*, 2011 WL 1465836, at *3 (N.D. Cal. Apr. 15 2011); *Benham Jewelry Corp. v. Aron Basha Corp.*, 1997 WL 639037, at *20 (S.D.N.Y. Oct. 14, 1997).

Second, TracFone's requested discovery is appropriate because it will conserve party and Court resources and expedite the litigation. *Semitool*, 208 F.R.D. at 276. In *Semitool*, a plaintiff in a patent infringement action requested expedited discovery to determine the full extent of the defendant's infringement. *Id.* The plaintiff argued that doing so would enable prompt amendment of the complaint, allow for a more meaningful Fed. R. Civ. P. 16 Pretrial Conference, and expedite the ultimate disposition of the case, saving court and party resources. *Id.* The court determined that, because the information sought by the plaintiff was discoverable under the current complaint and the defendant was already on notice that the plaintiff sought the information, the defendant was not prejudiced by an expedited discovery schedule. *Id.* at 276–77. As the requested discovery would move the case forward, the court ordered the expedited discovery. *Id.* at 277–78.

Judges in this district and others have examined this issue with respect to other defendants engaging in very similar schemes aimed at defrauding TracFone. *TracFone Wireless, Inc. v. Adams*, 304 F.R.D. 672, 672 (S.D. Fla. 2015) (Turnoff, M.J.); *TracFone Wireless, Inc. v. Holden Prop. Servs., LLC*, 299 F.R.D. 692, 694 (S.D. Fla. 2014) (Torres, M.J.); *TracFone Wireless, Inc. v. Nat'l Wireless Wholesale, Inc.*, 2010 WL 11639978 (M.D. Fla. Jan. 26, 2010); *TracFone Wireless, Inc. v. Wireless Ass'n LLC*, 2010 WL 11643273 (N.D. Tex. Feb. 3, 2010).

Magistrate Judge Goodman's recent orders in *TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613 (S.D. Fla. 2019), and *TracFone Wireless, Inc. v. Nektova Group, LLC*, 328 F.R.D. 664 (S.D. Fla. 2019), are particularly instructive as those cases also involved improper international handset trafficking activity being conducted by North American-based defendants with Ali in Dubai. *See Nektova*, 328

F.R.D. at 666 (determining good cause existed for expedited discovery because "of the credible showing TracFone has made that third parties potentially in possession of relevant information are under no duty to preserve that information," and to "mitigate any additional irreparable harm caused by Defendants' ongoing alleged scheme.").

In all of these cases, as here, the alleged conduct was essentially defrauding customers into believing that they were purchasing genuine TracFone products and services at a fraction of the cost. *SCS Supply Chain*, 330 F.R.D. at 613, *Nektova*, 328 F.R.D. at 666-67, *Adams*, 304 F.R.D. at 672-73; *Holden Prop. Servs.*, 299 F.R.D. at 693. In *Holden Property Services*, such conduct led the court to the conclusion that "expedited discovery is necessary so that TracFone may mitigate any additional irreparable harm caused by Defendant's ongoing alleged scheme." 299 F.R.D. at 694. As Magistrate Judge Torres found in *Holden*, expedited discovery is necessary here to protect TracFone from the ongoing alleged Trafficking Scheme.

Expedited discovery is also necessary so that TracFone may mitigate any additional irreparable harm caused by Defendants' ongoing Scheme. *See SCS Supply Chain*, 330 F.R.D. at 613; *Nektova*, 328 F.R.D. at 666; *Adams*, 304 F.R.D. at 672–73; *Holden Prop. Servs.*, 299 F.R.D. at 693; *United States v. Mayer*, 2003 WL 1950079, at *1–2 (M.D. Fla. Feb. 20, 2003) (ordering expedited civil discovery due to the risk of irreparable injury); *U.S. v. Gachette*, 2014 WL 5518669, at *1 (M.D. Fla. Sept. 26, 2014) (same).

Here, TracFone needs to quickly recover information concerning the extent of Defendants' unlawful activities. *See Holden*, 299 F.R.D. at 694; *TracFone Wireless, Inc. v. King Trading, Inc.*, 2008 WL 918243, at *1 (N.D. Tex. Mar. 13, 2008) (granting TracFone expedited discovery in similar scheme as it was necessary to learn the full extent of the defendants' misconduct). This information is being collected by third parties that Defendants are using to perpetrate the Trafficking Scheme, such as Walmart, Best Buy, Apple, Target, Meijers, Dollar Tree, Bank of America, Capital One, JP Morgan Chase, Key Bank National Association, UPS, DHL and FedEx, among others. *See* Wehling Dec. ¶¶27-28 (explaining why these third parties are likely to have pertinent information). Over the course of the past year, TracFone has attempted on several occasions to obtain this information directly from some of these third parties but has been unsuccessful because they are under no legal obligation to share their information with

8

TracFone. *See id*. Additionally, there is data these third parties are collecting that they do not have an obligation to preserve, such as log files and surveillance footage that are subject to shorter retention periods. *See id.*

If TracFone can send formal discovery to third parties under Rule 45, it can collect this and other information before it is permanently lost and take corrective and preventive measures to stem the damage being caused by Defendants' Scheme. *See Holden Prop Servs.*, 299 F.R.D. 693; *Interserve Inc. v. Fusion Garage PTE, Ltd.*, 2010 WL 143665, at *2 (N.D. Cal. Jan. 2010) (ordering expedited discovery upon accepting a plaintiff's "claim that it may be irreparably harmed if expedited discovery is not permitted" where, *inter alia*, the defendant had registered an internet domain name that infringed on plaintiff's rights); *Monsanto Co. v. Woods*, 250 F.R.D. 411, 414 (E.D. Mo. 2008) ("The loss of this evidence would result in irreparable injury to plaintiffs' claims."); *Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (granting expedited discovery in a copyright infringement case so that factual inquiries could be made to avoid further irreparable harm).

Federal courts frequently permit expedited discovery where there is a credible showing that a third party is in possession of potentially relevant information but under no duty to preserve that information. *Manny Film, LLC v. Doe*, 2015 WL 12732854, at *1 (S.D. Ohio Mar. 27, 2015) (granting expedited discovery directed to an internet service provider ("ISP") in consideration, *inter alia*, of "the danger that the ISP will not preserve the information sought"); *Arista Records, LLC v. Does 1-4*, 2007 WL 4178641, at *1 (W.D. Mich. Nov. 20, 2007) (finding that good cause to order expedited discovery is typically found upon allegations of infringement and a danger that third parties "will not preserve the information sought"); *Capitol Records, Inc. v. Doe*, 2007 WL 2429830, at *1 (S.D. Cal. Aug. 24, 2007) (expedited discovery was proper in consideration of the danger that the University of California, San Diego (a third party in possession of potentially important information) would not preserve the information that the plaintiffs sought.)

Mr. Wehling's declaration demonstrates that this is a real concern and TracFone's request for expedited discovery fits comfortably within these precedents.

### TracFone's Discovery Requests

TracFone seeks permission to serve expedited third-party subpoenas to parties

who are likely in possession of relevant information relating to Defendants' improper Scheme, including Walmart, Best Buy, Target, Meijer, Dollar Tree, shipping companies and/or courier services Defendants are likely to be using such as FedEx and UPS, banks or other financial institutions whose services Defendants used in connection with improper conduct, including Bank of America, Capital One, JP Morgan Chase, Key Bank National Association, and manufacturers like Apple.

These non-parties are presently under no obligation to preserve or produce such evidence. This will allow TracFone to combat the irreparable harm currently being inflicted by Defendants, and eventually stop it altogether. Federal courts commonly grant leave to serve third-party subpoenas, pursuant to Fed. R. Civ. P. 45, in such cases. *See, e.g., Living Scriptures v. Doe(s)*, 2010 WL 4687679, at *1–2 (D. Utah, Nov. 10, 2010) (granting leave to serve expedited third-party subpoenas to eBay and Paypal, noting that "the information Plaintiff seeks is transitory in nature"); *Wireless Ass'n*, 2010 WL 11643273 (granting leave to immediately begin issuing Rule 34 requests to third parties under similar circumstances); *Arista Records LLC v. Does 1–4*, 589 F. Supp. 2d 151, 155 (D. Conn. 2008) (granting plaintiff leave to serve expedited third-party subpoenas to internet service provider); *Warner Bros. Records, Inc. v. Does 1–6*, 527 F. Supp. 2d 1, 2–3 (D.D.C. 2007) (same); *Craigslist, Inc. v. Meyer*, 2010 WL 2975938, at *1 (N.D. Cal. July 26, 2010) (same).

TracFone requires this discovery so that it can determine the extent of Defendants' unlawful conduct. TracFone thus requests the Court grant TracFone expedited discovery and allow TracFone to serve its discovery requests.

TracFone further requests permission to serve its third party subpoenas via FedEx or UPS, as opposed to by personal delivery. The weight of authority from federal district courts in Florida and the rest of the Eleventh Circuit support that Rule 45 does not require personal service; rather, it requires service "reasonably calculated to insure receipt of the subpoena by the witness," which service via FedEx or UPS provides. *See, e.g., SCS Supply Chain*, 330 F.R.D. at 613; *Nektova*, 328 F.R.D. at 667; *Bozo v. Bozo*, 2013 WL 12128680, at *1 (S.D. Fla. Aug. 16, 2013) (Williams, J.); *In re Falcon Air Exp., Inc.*, 2008 WL 2038799, at *1, *4 (Bankr. S.D. Fla. May 8, 2008) (Cristol, B.J.); *S.E.C. v. Rex Venture Grp., LLC*, 2013 WL 1278088, at *3 (M.D. Fla. March 28, 2013); *TracFone*

*Wireless, Inc. v. Does*, 2011 WL 4711458, *4 (S.D. Fla. Oct. 4, 2011) (Turnoff, M.J.); *Codrington v. Anheuser-Busch, Inc.*, 1999 WL 1043861, at *1 (M.D. Fla. Oct. 15, 1999); *In re Application of MTS Bank*, 2018 WL 1718685, at *4 n.3 (S.D. Fla. Mar. 16, 2018) (Torres, M.J.); *Rainey v. Taylor*, 2019 WL 1922000, at *2 (S.D. Fla. Apr. 30, 2019) (Torres, M.J.) ("Rule 45 itself does not require service to be accomplished" any particular way; "rather, it only requires "deliver[y]" of the subpoena." (quoting Fed. R. Civ. P. 45)); *Castleberry v. Camden Cty.*, 2019 WL 2106076, at *2 (S.D. Ga. May 14, 2019) ("personal service is not required for service of Rule 45 subpoenas.").

In addition, many courts have determined that service of third party subpoenas via FedEx or UPS comports with due process affords sufficient notice under the Federal Rules. *See, e.g., Warsteiner Importers Agency, Inc. v. Republic Nationall Distributing Company, LLC*, 2008 WL 4104568, at *6 (M.D. Fla. July 31, 2008); *Tim Hortons USA, Inc. v. Singh*, 2017 WL 1326285, at *9 (S.D. Fla. Apr. 5, 2017); *Mainstream Media, EC v. Riven*, 2009 WL 2157641, at *3 (N.D. Cal. July 17, 2009) (noting that service via FedEx comported with due process); *Ehrenfeld v. Salima Bin Mahfouz*, 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005) (service via FedEx comported with due process); *TracFone Wireless, Inc. v. Hernandez*, 126 F. Supp. 3d 1357, 1363–64 (S.D. Fla. 2015) (Martinez, J.) (same and collecting cases).

**Service on Canadian Defendants
Pursuant to Fed. R. Civ. P. 4(f)(1)**

TracFone also requests an order to effectuate service on the Canadian Defendants and Canadian subpoena recipients pursuant to Fed. R. Civ. P. 4(f)(1). Canada is a signatory to the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention"). *See Jerge v. Potter*, No. 99-312, 2000 WL 1160459, *1 (W.D.N.Y. Aug. 11, 2000).

The Supreme Court held that the transmittal of documents for service abroad must be made pursuant to the provisions of the Hague Service Convention. *Volkswagenwerk Akitengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). While service through the central authority of the destination country is *one* way to effectuate service, the Supreme Court of the United States has recently ruled that "the traditional tools of

11

treaty interpretation unmistakably demonstrate that Article 10(a) encompasses service by mail.… Article 10(a) simply provides that, as long as the receiving state does not object, the Convention does not interfere with ... the freedom to serve documents through postal channels. In other words, in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Water Splash v. Menon*, 137 S. Ct. 1504, 1513 (2017) (internal quotation marks omitted);[4] *Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co., Ltd.*, 2019 WL 246562, at *2 (S.D. Cal. Jan. 17, 2019) (citing *Water Splash*); *Patrick's Rest., LLC v. Singh*, 2019 WL 121250, at *2 (D. Minn. Jan. 7. 2019) (same).

Canada does not object to Article 10(a) and, accordingly, permits service by international mail. *See Does*, 2011 WL 4711458, at *4; *Girafa.com, Inc. v. Smartdevil Inc.*, 728 F. Supp. 2d 537, 543 (D. Del. 2010) ("Under Article 10 of the Hague Convention, Canada does not object to service by postal channels."); *McCormick v. Apache, Inc.*, 2009 WL 2985470, *2 (N.D. W.Va. Sept. 15, 2009) ("Canada, the destination country in this case, does not object to service under Article 10."); *Anderson v. Canarail, Inc.*, No. 05-3828, 2005 WL 2454072, *4 (S.D.N.Y. Oct. 6, 2005) (Hague Convention allows service by mail in Canada); *Sibley v. Alcan, Inc.*, 400 F. Supp. 2d 1051, 1055 (N.D. Ohio 2005) ("service of process by registered mail … to a Canadian defendant is permitted by Article

---

[4] The U.S. Supreme Court's decision in *Water Splash* resolved a circuit split and confirmed the propriety of the decisions reached in *Barriere v. Juluca*, 2014 WL 652831, at *2-3 (S.D. Fla. Feb. 19, 2014) (Moreno, J.*); Forth v. Carnival Corporation*, 2013 WL 1840373 (S.D. Fla. 2013) (Seitz, J.); *TracFone Wireless, Inc. v. Unlimited PCS, Inc.*, 279 F.R.D. 626, 630-31 (S.D. Fla. 2012) (Ungaro, J.); *TracFone Wireless, Inc. v. Sunstrike Intern., Ltd.*, 273 F.R.D. 697, 699 (S.D. Fla. 2011) (Martinez, J.); *TracFone Wireless, Inc. v. Bequator Corp., Ltd.*, 717 F. Supp. 2d 1307, 1309 (S.D. Fla. 2010) (Hoeveler, J.); *TracFone v. Does*, 2011 WL 4711458, at *2 (S.D. Fla. Oct. 4, 2011) (Turnoff, M.J.) and effectively overruled the contrary line of authority set forth in cases including *Intelsat Corp. v. Multivision TV LLC*, 736 F. Supp. 2d 1334 (S.D. Fla. 2010) (Altonaga, J.); *ARCO Elec. Control, Ltd. v. CORE Int'l*, 794 F. Supp. 1144, 1147 (S.D. Fla. 1992) (Roettger, J.); *Wasden v. Yamaha Motor Co. in U.S.A.*, 131 F.R.D. 206 (M.D. Fla. 1990) (Kovachevich, J.); *McClenon v. Nissan Motor Corp.*, 726 F. Supp. 822 (N.D. Fla.1989) (Vinson, J.); *Merial Inc. v. Ceva Sante Animale, S.A.*, 2016 WL 320141, at *3 (M.D. Ga. Jan. 26, 2016) (Land, J.).

10(a)"); *Dimensional Commc'n, Inc., v. Oz Optics Ltd.*, 218 F. Supp. 2d 653, 656 (D. N.J. 2002) (finding Canada allows methods of service in Article 10 of the Convention).

### Service on Canadian Defendants
### Pursuant to Fed. R. Civ. P. 4(f)(2)

Further, Fed. R. Civ. P. 4(f)(2)(C)(ii) also provides for service to be made on a party located outside the United States by mail. Specifically, Fed. R. Civ. P. 4(f)(2)(c)(ii) provides, in pertinent part, that if not prohibited by federal law or the foreign country's law, service may be made by "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." Fed. R. Civ. P. 4(f)(2)(c)(ii). "Article 10(a) [of the Hague Service Convention] provides that, if the State of destination does not object, the Hague Convention does not change the freedom to send judicial documents, by postal channels, directly to persons abroad." *TracFone Wireless, Inc. v. Bequator Corp., Ltd.*, 717 F. Supp. 2d 1307, 1309 (S.D. Fla. 2010) (citing *Curcuruto v. Cheshire*, 864 F. Supp. 1410, 1411 (S.D. Ga. 1994)); *see also TracFone Wireless, Inc. v. Sunstrike Int'l., Ltd.*, 273 F.R.D. 697, 699 (S.D. Fla. 2011). Canada *does not object* to judicial documents being sent by postal channels. *See Heredia v. Transport S.A.S., Inc.*, 101 F. Supp. 2d 158, 161 (S.D.N.Y. 2000) (noting that "Canada does not object to service by postal channels" and therefore "service by registered mail in Quebec is adequate service under the Convention"); U.S. Department of State, Judicial Assistance in Canada (stating that serving U.S. legal documents in Canada via International Registered Mail is proper), which can be found online at https://travel. state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Canada.html (last visited September 2019); and *see* Canada's Central Authority (providing overview of the methods of service recognized in Canada), accessible at https://www.hcch.net/ en/states/authorities/details3/?aid=248 (last visited September 2019). Further, as discussed above, Canada "does not object to Article 10(a) [of the Hague Service Convention] and, accordingly, permits service by international express mail." *Does*, 2011 WL 4711458, at *4.[5]

Service by mail pursuant to Fed. R. Civ. P. 4(f)(1) and Fed. R. Civ. P. 4(f)(2)(C)(ii) has previously been approved in substantively identical circumstances by Judge

---

[5] Consistent with Magistrate Judge Turnoff's order in *Does*, TracFone should also be permitted to serve on subpoenas by postal channel to recipients in Canada.

13

Martinez in *Sunstrike*, 273 F.R.D. at 699, and Judge Hoeveler in *Bequator*, 717 F. Supp. 2d 1307 (S.D. Fla. 2010). Pursuant to Fed. R. Civ. P. 4(f)(1) and (2)(C)(ii), a judicial officer must initiate the service. Once the Court enters the Order, TracFone will deliver the required documents to the Clerk's office so that the Clerk can carry out the Order.[6]

**Proof of Service Pursuant to Fed. R. Civ. P. 4(l)(2)(B)**

TracFone requests that it be permitted to file a copy of the FedEx "proof of signature" or email delivery confirmation (or substantially equivalent documents) as proof that service has been effectuated pursuant to Fed. R. Civ. P. 4(l)(2)(B), which provides that when service is made pursuant to Fed. R. Civ. P. 4(f)(2) or (3), service may be proved "by a receipt signed by the addressee, or by other evidence satisfying the court that summons and complaint were delivered to the address." Fed. R. Civ. P. 4(l)(2)(B). *See Bequator*, 717 F. Supp. 2d at 1310.

### CONCLUSION

For the reasons set forth herein, TracFone requests that the Court enter an order[7] which:

(a) permits TracFone to commence limited expedited non-party discovery via FedEx or UPS;

(b) directs the Clerk of Court to dispatch a copy of the Summons, Complaint and Order via international FedEx for service upon the Canadian Defendants pursuant to Fed. R. Civ. P. 4(f)(1) and Fed. R. Civ. P. 4(f)(2)(c)(ii);

(c) authorizes TracFone to serve the Canadian Defendants with a copy of the Summons, Complaint and Order by sending a copy of same to each Defendant via FedEx; and

(d) orders that TracFone may file a copy of the FedEx "proof of signature" or email delivery confirmation (or substantially equivalent documents) as proof, pursuant to Fed. R. Civ. P. 4(l)(2)(B), that service has been effectuated on the Canadian Defendants pursuant to this Court ordered-alternate method of service under Fed. R. Civ. P. 4(f)(2) and (3).

---

[6] TracFone will supply the Clerk with pre-paid and pre-addressed envelopes to carry out the relief requested herein at TracFone's expense.

[7] A proposed order is attached as **Exhibit B**.

14

## CERTIFICATION REGARDING S.D. FLA. L. R. 7.1(A)(3)

Pursuant to S.D. Fla. L.R. 7.1(a)(3), undersigned counsel for TracFone is unable to confer with Defendants or their counsel prior to making this motion, as they have not appeared in this action.

Dated: October 21, 2019    By: *Aaron S. Weiss*

Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Steven M. Blickensderfer (FBN 92701)
sblickensderfer@carltonfields.com
Carlton Fields, P.A.
100 S.E. Second St., Suite 4200
Miami, Florida 33131
Telephone: 305.530.0050

James B. Baldinger (FBN 869899)
jbaldinger@carltonfields.com
Carlton Fields, P.A.
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida 33401
Telephone: 561.659.7070

*Attorneys for Plaintiff TracFone Wireless, Inc.*